UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE CURTIS,

        Petitioner,         Case No. 1:15-cv-129

v.                             Honorable Janet T. Neff

LORI GIDLEY,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Willie Curtis presently is incarcerated at the Oaks Correctional Facility. On June 3, 2004, Petitioner was charged with first-degree home invasion and multiple counts of criminal sexual conduct (CSC). He pleaded guilty in the Ingham County Circuit Court to first-degree home invasion, in exchange for the dismissal of the CSC charges. On July 27, 2005, Petitioner was sentenced to imprisonment for three to twenty years.

While incarcerated on the offense, Petitioner underwent a psychological evaluation. He was labeled a sex offender and required to complete a sex offender treatment program (SOP). Petitioner entered the program on July 20, 2006 and completed it on July 5, 2007. He was paroled on August 23, 2007. Petitioner alleges that he was unaware that he was entitled to notice and a hearing before being labeled a sex offender.

While on parole, Petitioner was convicted of first-degree retail fraud. After Petitioner pleaded guilty to the offense, he was sentenced to a prison term of one year and two months to five years. His parole on the home-invasion charge also was revoked, and he continues to serve the remainder of his prison term on that offense.

When Petitioner returned to prison, he was again labeled a sex offender. On July 22, 2012, the Michigan Parole Board rendered a deferred parole decision, which was dependent on the outcome of a psychological sex-offender evaluation required under MICH. COMP. LAWS §§ 28.722 - 28.730. Petitioner underwent psychological evaluation on November 2, 2012, and his parole was denied on November 19, 2012.

Thereafter, Petitioner was transferred to a different prison and was enrolled in the violence prevention program, which was mandatory for violent offenders. Despite the fact that

prisoners enrolled in mandatory programs typically are not transferred, Petitioner was transferred in February 2013 to yet another prison. In August 2013, during an interview with a psychologist, Petitioner was informed that he was scheduled to begin a six-month SOP program. Petitioner informed the psychologist that he already had completed SOP and that he thought there had been a mistake. The psychologist informed him that SOP had been ordered by the parole board.

At this juncture, Petitioner went to the law library to investigate the legality of forcing him to complete the program twice. His investigation led him to believe that the MDOC had been violating his right to due process for years by making the completion of SOP a requirement for parole. Petitioner informed the psychologist of the things he had learned, to no avail. Two weeks later, at a parole interview, he informed a parole board member of his concerns, but they were ignored. Petitioner was denied parole on September 23, 2013, because he had not completed SOP.

Petitioner contends that he was designated a sex offender without due process, in violation of the Fourteenth Amendment. For relief, he asks to be removed from sex-offender classification, and he seeks to be relieved of the requirement that he complete SOP to be eligible for parole. He also seeks an immediate parole hearing in which his SOP designation is not considered. In addition, he demands that all of his prison misconduct tickets be removed or stricken prior to his parole interview. Finally, he seeks reimbursement for his filing fee and associated costs.

## Discussion

Petitioner's allegations largely fall outside the ambit of habeas corpus proceedings. Where a prisoner is challenging the very fact or duration of his physical imprisonment and the relief that he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a petition for writ of habeas corpus. *See Preiser v.*

*Rodriguez,* 411 U.S. 475, 500 (1973).  However, habeas corpus is not available to prisoners who are complaining only of the conditions of their confinement or mistreatment during their legal incarceration.  *See Martin v. Overton,* 391 F.3d 710, 714 (6th Cir. 2004); *Lutz v. Hemingway,* 476 F. Supp. 2d 715, 718 (E.D. Mich. 2007).  Complaints concerning conditions of confinement "do not relate to the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the incarceration of the petitioner." *Lutz,* 476 F. Supp. 2d at 718 (quoting *Maddux v. Rose,* 483 F. Supp. 661, 672 (E.D. Tenn. 1980)).

To the extent that Petitioner claims that he should have been paroled earlier, he fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see*

*also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his 20-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Petitioner for parole, therefore, implicates no federal right. In the absence of a liberty interest, Petitioner fails to state a claim for a violation of his procedural due process rights by the denial of parole.

Plaintiff's remaining allegations do not call into question the validity of his conviction and do not necessarily implicate the duration of his confinement. They therefore are not cognizable in this habeas proceeding. *Martin,* 391 F.3d at 714.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's

dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322,

327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:  February 27, 2015              /s/ Janet T. Neff
                                       Janet T. Neff
                                       United States District Judge